UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LOREN ANDERSON, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>UNITED PARCEL SERVICE, INC.; and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 3:26-cv-05866<br><br>**DEFENDANT UNITED PARCEL SERVICE, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT [28 U.S.C. §§ 1332(d), 1441, 1446, AND 1453]**<br><br>Removed from Pierce County Superior Court (Case No. 26-2-09497-2) |

**TO: CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA**

**AND TO: PLAINTIFF AND HIS ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Defendant United Parcel Service, Inc. ("UPS" or "Defendant") hereby removes this action from the Superior Court of the State of Washington, County of Pierce, to the United States District Court for the Western District of Washington at Tacoma, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because: (1) at least one member of the putative class is a citizen of a state different from at least one defendant; (2) the putative class contains more than 100 members; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

Defendant denies the material allegations of the Complaint and specifically reserves all defenses, motions, and pleas. Nothing stated herein shall be construed as a waiver of any defense, an admission of fact, or an admission of the merit of any claim in the Complaint. In support of removal, Defendant states as follows:

## I. PROCEDURAL BACKGROUND

1. On June 18, 2026, Plaintiff Loren Anderson ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of Washington, County of Pierce, captioned *Loren Anderson v. United Parcel Service, Inc., et al.*, Case No. 26-2-09497-2.

2. On July 1, 2026, Defendant was served with the Summons and Complaint. A true and correct copy of the Summons, Complaint, and all process served on Defendant is attached hereto as **Exhibit A**.

3. The Complaint asserts ten causes of action against Defendant: (1) Payment of Wages Less Than Entitled and Failure to Pay Minimum Wages (RCW 49.46.090, 49.46.130); (2) Failure to Pay Overtime Wages (RCW 49.46.130); (3) Failure to Provide Rest Periods (RCW 49.12.020; WAC 296-126-092); (4) Failure to Provide Meal Periods (RCW 49.12.020; WAC 296-126-092); (5) Willful Withholding of and/or Refusal to Pay Wages (RCW 49.52.050, 49.52.070); (6) Failure to Accrue, Allow Use of, and Properly Compensate Paid Sick Leave (RCW 49.46.210; WAC 296-128-620); (7) Failure to Pay Wages Due at Established Pay Periods (WAC 296-126-023); (8) Failure to Pay Wages Owed at Termination of Employment (RCW 49.48.010, 49.52.070); (9) Failure to Furnish Itemized and Complete Wage Statements (WAC 296-126-040); and (10) Failure to Maintain Adequate Records (WAC 296-128-010, WAC 296-126-050, RCW 49.46.070).

4. The Complaint defines the putative class as "all current and former hourly-paid or non-exempt employees of UPS who worked in the State of Washington at any time during the three (3) years preceding the filing of this action." Compl. ¶ 41.

5. Plaintiff seeks, on behalf of himself and the putative class, damages for unpaid



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

wages, overtime, meal and rest period premiums, statutory penalties, double damages for willful withholding, injunctive relief, restitution, attorneys' fees and costs, and pre- and post-judgment interest. Compl., Prayer for Relief.

## II. REMOVAL IS TIMELY

6. A defendant may remove a civil action within thirty days after being served with the initial pleading or summons. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). Under CAFA, removal is permitted under 28 U.S.C. § 1453(b) without regard to whether any defendant is a citizen of the state in which the action was brought.

7. Defendant was served on July 1, 2026. This Notice of Removal is being filed on July 31, 2026, which is within thirty (30) days of service. Accordingly, removal is timely.

8. No prior notice of removal has been filed in this action.

## III. THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

9. CAFA grants federal district courts original jurisdiction over class actions in which: (1) there is minimal diversity of citizenship between any member of the putative class and any defendant; (2) the proposed class consists of more than 100 members; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (5)(B), (6); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). All three requirements are satisfied here.

### A. Diversity of Citizenship Exists

10. CAFA requires only "minimal diversity," meaning that any member of the putative plaintiff class must be a citizen of a different state than any defendant. 28 U.S.C. § 1332(d)(2)(A); *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010).

/ / /



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

**1. Plaintiff and the Putative Class Are Citizens of Washington**

11. A natural person is a citizen of the state in which he or she is domiciled. *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002); *Armstrong v. Church of Scientology*, 243 F.3d 546 (9th Cir. 2000). The Complaint alleges that Plaintiff is a resident and citizen of the State of Washington.

12. The putative class is defined as employees who worked in the State of Washington. Accordingly, Plaintiff and members of the putative class are citizens of Washington.

**2. Defendant United Parcel Service, Inc. Is Not a Citizen of Washington**

13. A corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center," which is the place where its officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

14. The Complaint itself alleges that UPS is a "Foreign Public Utility Corporation," thereby acknowledging that UPS is not a Washington corporation.

15. UPS is a corporation organized under the laws of the State of Ohio and maintains its principal place of business in Atlanta, Georgia.[1] Accordingly, UPS is not a citizen of Washington, and minimal diversity is satisfied.

**B. <u>The Putative Class Has More Than 100 Members</u>**

16. CAFA's jurisdictional requirements are not met if the proposed class contains fewer than 100 members. 28 U.S.C. § 1332(d)(5)(B). Here, the Complaint alleges that the Class "is estimated to be approximately fifty (50) or more individuals, and the identity of such membership is readily ascertainable by inspection of Defendants' records." Compl. ¶ 44.

17. However, based on Defendant's business records, the putative class includes at least 22,500 individuals who were employed by UPS in Washington as hourly-paid or non-exempt employees during the relevant class period.[2] Therefore, the class easily exceeds 100 members.

---

[1] Robert Anderson Decl., paragraphs 6-7.

[2] Robert Anderson Decl., paragraph 5.



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

**C. <u>The Amount in Controversy Exceeds $5,000,000</u>**

18. Under CAFA, the claims of the individual members of the proposed class are aggregated to determine whether the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6).

19. The removing defendant need only plausibly allege that the amount in controversy exceeds $5,000,000. *Dart Cherokee*, 574 U.S. at 87; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). If challenged, the defendant must establish by a preponderance of the evidence that the amount in controversy is met. *LaCross v. Knight Transp., Inc.*, 775 F.3d 1200 (9th Cir. 2015).

20. In assessing the amount in controversy, courts consider the face of the complaint and may rely on reasonable assumptions. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022).

21. The amount in controversy is assessed at the time of removal and includes all amounts at stake in the litigation, including damages, penalties, and attorneys' fees. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).[3]

**1. First Cause of Action: Failure to Pay All Wages/Minimum Wages (RCW 49.46.090, 49.46.130)**

22. Plaintiff alleges that UPS failed to compensate employees for all hours worked, including off-the-clock work. Specifically, the Complaint alleges that Defendants "engaged in a common course of failing to compensate Plaintiff and Class Members for all work performed and/or compensable time, including, inter alia, work performed off-the-clock before clocking-in for a shift, after clocking-out for what should have been a duty-free meal period, and/or after clocking out for a shift." Compl. ¶ 31. The Complaint further alleges that this uncompensated time "goes unrecorded and is not compensated at applicable minimum, regular, and/or overtime rates

---

[3]Defendant's discussion of the amount in controversy is not an admission of liability or damages. Defendant denies that Plaintiff or any putative class member is entitled to any recovery whatsoever.



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

under Washington law, which gives rise to wage violations." Compl. ¶ 31. In addition, the Complaint alleges that Defendant "engaged in a common course of making deductions and collecting rebates from the wages of, or compensation to be paid to, Plaintiff and Class Members by requiring Plaintiff and Class Members to incur employer and/or business-related expenses and costs and failing to reimburse for them," and that these "unreimbursed costs reduced Plaintiff's and Class Members' take-home pay below the legally-required wage rates." Compl. ¶ 38. Taken as true for purposes of removal, these allegations place a significant amount in controversy on Plaintiff's first cause of action.

23. The Washington Minimum Wage Act ("WMWA") provides that a "wage" is "compensation due to an employee by reason of employment, payable in legal tender of the United States or checks on banks convertible into cash on demand at full face value, subject to such deductions, charges, or allowances as may be permitted by rules of the director." RCW 49.46.010; Compl. ¶ 52. "Employers who pay any employee less than the amounts to which the employee is entitled to are liable to those employees for the full amount due in addition to costs and reasonable attorney's fees as allowed by the court." RCW 49.46.090(1); Compl. ¶ 53. Claims for unpaid wages under the WMWA are subject to a three-year statute of limitations. *See Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wash. 2d 824, 837-38 (2000).

24. Because the Complaint does not plead a specific number of hours of unreimbursed or uncompensated work per week, Defendant applies a reasonable, conservative estimate derived from the off-the-clock work described in the Complaint. Based on Defendant's records, the putative class is comprised of approximately 22,500 employees who worked a total of approximately 1,163,044 workweeks and 5,815,220 shifts during the applicable three-year statute of limitations.[4] The putative class is divisible into full-time and part-time employees. There are approximately 4,510 full-time putative class members, who worked approximately 534,406 workweeks during the limitations period.[5] There are approximately 17,990 part-time putative class

[4]Robert Anderson Decl., paragraph 5.

[5]*Id.*



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

members, who worked approximately 628,638 workweeks during the limitations period.[6] Full-time employees were scheduled to work at least five shifts of eight hours per week, whereas most part-time employees were scheduled to work at least five shifts of three-and-one-half hours per week.[7] The average rate of pay for all putative class members during the limitations period is $25.83 per hour.[8] The average rate of pay for full-time putative class members is $38.96 per hour, while the average rate of pay for part-time putative class members is $22.55.[9]

25. Assuming Plaintiff claims a conservative fifteen (15) minutes, or .25 hours, of uncompensated straight time for each putative class member for each week worked (i.e., 3 minutes off the clock per shift and 5 shifts worked per week) on account of the off-the-clock work alleged in the Complaint, the amount in controversy on this claim is calculated as follows: .25 hours ST per week x $25.83 x 1,163,044 weeks = **$7,510,357**.

### 2. Second Cause of Action: Failure to Pay Overtime Wages (RCW 49.46.130)

26. Plaintiff alleges that all Class Members "regularly worked approximately forty (40) or more hours per week." Compl. ¶ 32. The Complaint further alleges that Defendant "engaged in a common course of failing to pay overtime wages to Plaintiff and Class Members for all hours worked over forty in a week at a rate of not less than one and one-half times their regular rate of pay, e.g., by requiring Plaintiff and Class Members to perform work off-the-clock, which extended the work performed during the workweek beyond forty (40) hours and resulted in Defendants' failure to pay compensation for all of the time that Plaintiff and Class Members performed work for Defendants." Compl. ¶ 33. Taking these allegations as true, Plaintiff and the putative class are owed overtime premium pay for off-the-clock hours worked in excess of forty hours per week.

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

27. Pursuant to the WMWA, "Defendants are required to pay Plaintiff and Class Members one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a given workweek and additional compensable time for all late, shortened, and/or missed rest breaks in such weeks." RCW 49.46.130; Compl. ¶ 58.

28. The amount in controversy for this claim is significant. Assuming Plaintiff claims a conservative fifteen (15) minutes, or .25 hours, of uncompensated overtime time for *full-time* putative class member for each week worked on account of the off-the-clock work alleged in the Complaint, the amount in controversy on this claim is calculated as follows: .25 hours OT per week x $58.44 (1.5 x $38.96) x 534,406 weeks = **$7,807,672**.

### 3. Third Cause of Action: Failure to Provide Rest Periods (RCW 49.12.020; WAC 296-126-092)

29. The Complaint alleges that Defendants "engaged in a common course of (1) failing to provide Plaintiff and Class Members with a paid ten-minute rest period for every four hours worked; and (2) requiring or permitting Plaintiff and Class Members to work more than three consecutive hours without a rest period." Compl. ¶ 21. The Complaint further alleges that Defendants "engaged in a common course of failing to provide Plaintiff and Class Members with ten-minutes additional pay and/or time worked for each late, shortened, and/or missed rest period, by requiring them to perform work, remain on-call, and/or remain on-duty, during what should have been an off-duty rest period." Compl. ¶ 22. Because Plaintiff alleges a uniform, common course of conduct denying rest periods to all Class Members, a conservative violation-rate assumption of at least one missed rest period per week is reasonable. *See Berry v. Transdev Services, Inc.*, 2016 WL 11261499, at *3 (W.D. Wash. Jan. 11, 2016) (affirming use of violation-rate assumptions where the complaint alleged employees had no opportunity to take breaks to which they were entitled).

30. The Washington Industrial Welfare Act ("WIWA") declares that "[t]he welfare of the state of Washington demands that all employees be protected from conditions of labor which



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

have a pernicious effect on their health," RCW 49.12.010, and that "[i]t shall be unlawful to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health." RCW 49.12.020; Compl. ¶¶ 62-63. Its implementing regulation, WAC 296-126-092, provides that employees "cannot waive their rest breaks and shall be allowed a rest break not less than ten (10) minutes on the employer's time for each four (4) hours of working time during their shifts," and that "[r]est periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period." Compl. ¶¶ 65-66. Employers have "a duty to provide rest breaks and to ensure the breaks comply with the requirements of WAC 296-126-092." *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 688 (2011); see also *Carlson v. Home Depot USA Inc.*, No. C20-1150 MJP, 2021 WL 4636858, at *4 (W.D. Wash. Oct. 7, 2021).

31. Applying a conservative assumption that *full-time* putative class members experienced one rest break violation per workweek, the amount in controversy for this claim is calculated as follows: .16 hours per week (10 minutes) x $38.96 x 534,406 weeks = **$3,331,273**.

### 4. Fourth Cause of Action: Failure to Provide Meal Periods (RCW 49.12.020; WAC 296-126-092)

32. The Complaint alleges that Defendants "engaged in a common course of requiring or permitting Plaintiffs and Class Members to work more than five consecutive hours without a meal period, including by failing to provide Plaintiff and Class Members with a thirty-minute meal period for every five hours of work and a second 30-minute meal period within five hours from the end of the first meal period and for each five hours worked thereafter." Compl. ¶ 23. The Complaint further alleges that Defendants "engaged in a common course of failing to provide Plaintiff and Class Members with a thirty-minute meal period prior to or during the overtime period, when Plaintiff and Class Members were scheduled to work three (3) or more hours longer than a normal work day," Compl. ¶ 24, and "engaged in a common course of failing to provide Plaintiff and Class Members with thirty minutes additional pay and/or time worked for each late,



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

shortened, and/or missed meal period." Compl. ¶ 27. As with the rest-period claim, these allegations of a uniform course of conduct support a conservative violation-rate assumption of one meal period violation per workweek per putative class member for purposes of estimating the amount in controversy on this claim.

33. Under the WIWA's implementing regulation, employees "shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift," and, where the employer requires the employee to remain on duty, the meal period "shall be on the employer's time." WAC 296-126-092(1); Compl. ¶ 75. "No employee shall be required to work more than five consecutive hours without" being provided "a meal period of not less than thirty (30) minutes." WAC 296-126-092(2); Compl. ¶ 76. Employees are also entitled to a second thirty-minute meal period within five hours of the end of the first meal period and for each five hours worked thereafter, and to a meal period before or during any overtime period of three or more hours. WAC 296-126-092(3); Compl. ¶¶ 77-78. See *Carlson v. Home Depot USA Inc.*, No. C20-1150 MJP, 2021 WL 4636858, at *4 (W.D. Wash. Oct. 7, 2021) (describing employer meal-period obligations under WAC 296-126-092).

34. Applying a conservative assumption that *full-time* putative class members experienced one meal period violation per workweek, the amount in controversy for this claim is calculated as follows: .5 hours per week (30 minutes) x $38.96 x 534,406 weeks = **$10,410,229**.

### 5. Fifth Cause of Action: Willful Withholding of Wages (RCW 49.52.050, 49.52.070)

35. The Washington Wage Rebate Act ("WWRA") makes it a misdemeanor for any employer who "[w]ilfully and with intent to deprive the employee of any part of his or her wages" pays "any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.050(2). Nonpayment of wages is willful and made with intent "when it is the result of knowing and intentional action and not the result of bona fide dispute as to the obligation of payment." *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841,



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

849 (2002). The WWRA further provides that an employer who violates RCW 49.52.050 "shall be liable in a civil action for twice the amount of wages withheld, together with costs of suit and reasonable attorneys' fees." RCW 49.52.070. The Complaint alleges that Defendant "intentionally failed to pay all wages owed to Plaintiff and Class Members, and Defendants knew or should have known that their employment policies, practices, and procedures violated Washington law." Compl. ¶ 86. The Complaint further alleges that Defendant's "violations of RCW 49.12.020, WAC 296-126-092, RCW 49.46.090, RCW 49.46.130, and RCW 49.48.010 were willful and intentional under RCW 49.52.050." Compl. ¶ 87. Plaintiff accordingly seeks double damages on the amounts owed under the First through Fourth Causes of Action.

36. Accordingly, because RCW 49.52.070 doubles the wages recoverable under the First through Fourth Causes of Action, the Fifth Cause of Action places an additional **$29,059,531** in controversy, equal to the aggregate amount already placed in controversy by those claims.

**6. Sixth Through Tenth Causes of Action and Attorneys' Fees**

37. The remaining causes of action place additional, unquantified amounts in controversy, each grounded in its own statutory or regulatory requirement. The Washington Paid Sick Leave Act requires that employees "accrue paid sick leave for all hours worked at a rate of at least one hour for every forty hours worked." RCW 49.46.210; WAC 296-128-620; Compl. ¶ 90. The Sixth Cause of Action alleges that Defendants "engaged in a common course of failing to accrue sick time for and failing to allow the usage of paid sick time for qualifying absences by Plaintiff and Class Members by failing to accrue paid sick time for all hours worked by Plaintiff and Class Members." Compl. ¶ 35. WAC 296-126-023(3) requires that wages be paid "no later than ten calendar days after the end of the pay period if the pay period is less than a month long," and WAC 296-126-023(6) requires overtime wages to be paid no later than the regular pay day following the next payroll period. Compl. ¶¶ 95-96. The Seventh Cause of Action alleges that Defendants failed to pay all wages due to Plaintiff and Class Members "at the established regular pay periods." Compl. ¶ 99. The Washington Wage Payment Act provides that "[w]hen any



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him at the end of the established pay period." RCW 49.48.010; Compl. ¶ 102. The Eighth Cause of Action alleges that Defendants failed to timely pay such wages at termination of employment, entitling Plaintiff and Class Members to pre- and post-judgment interest at 12 percent per annum under RCW 19.52.020. Compl. ¶ 104. WAC 296-126-040(1) requires that "every employer shall furnish to each employee at the time of payment of wages an itemized statement showing the pay basis..., rate or rates of pay, gross wages and all deductions for that pay period." The Ninth Cause of Action alleges that Defendants issued wage statements that "did not include the wages and additional compensation owed for noncompliant meal periods and rest breaks and off-the-clock work." Compl. ¶ 107. WAC 296-126-050 requires that "every employer shall keep for at least three years a record of the name, address, and occupation of each employee, dates of employment, rate or rates of pay, amount paid each pay period to each such employee and the hours worked." Compl. ¶ 111. The Tenth Cause of Action alleges that Defendants failed to maintain such complete and accurate payroll records, as also required by WAC 296-128-010 and RCW 49.46.070.

38. Each of these five additional causes of action, together with the statutory penalties, restitution, and injunctive relief sought in the Complaint's Prayer for Relief, further increases the amount already placed in controversy by the First through Fifth Causes of Action, even though Defendant does not attempt to quantify these amounts for purposes of this Notice.

39. The Complaint also seeks attorneys' fees and costs. In class actions, courts routinely include a 25% benchmark for attorneys' fees when calculating the amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794-96 (9th Cir. 2018); *Dawsey v. Travelers Prop. Cas. Co. of Am.*, No. C14-5765, 2015 WL 4394545, at *3 (W.D. Wash. July 16, 2015).

40. Adding the estimated attorneys' fees at the 25% benchmark further increases the total amount in controversy by at least **$14,529,766** (.25 x $58,119,062) in wages based on the



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

First through Fifth Causes of Action).

41. In total, the aggregate amount in controversy is **$72,648,828**, which well exceeds CAFA's $5,000,000 threshold.

**D. <u>CAFA's Exceptions to Removal Do Not Apply</u>**

42. The "home-state exception" to CAFA jurisdiction does not apply. Under 28 U.S.C. § 1332(d)(4)(B), a district court must decline jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes" are citizens of the forum state and "the primary defendants" are also citizens of the forum state. Here, UPS is not a citizen of Washington. See *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2013).

43. The "local-controversy exception" under 28 U.S.C. § 1332(d)(4)(A)(ii) also does not apply. That exception requires, among other things, that no similar class action has been filed against any of the defendants in the preceding three years. *See Chalian v. CVS Pharmacy, Inc.*, No. CV 17-1648, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 13, 2017). Here, a similar class action against Defendant was filed on June 23, 2026, in the United States District Court for the Western District of Washington, titled *Patrick Farrelly et al. v. United Parcel Service, Inc.*, Case No. 2:26-cv-02175.

44. Accordingly, neither exception applies, and this Court has jurisdiction under CAFA.

**IV. <u>VENUE</u>**

45. Venue is proper in this Court. Pierce County, Washington, where the state court action was filed, is located within the Western District of Washington. 28 U.S.C. §§ 1441(a), 1446(a).

**V. <u>NOTICE</u>**

46. Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly serve written notice of the filing of this Notice of Removal on all parties and will file a copy of this Notice of Removal



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

with the Clerk of the Superior Court of the State of Washington, County of Pierce.

## VI. CONCLUSION

47. Based on the foregoing, Defendant respectfully removes this action to the United States District Court for the Western District of Washington at Tacoma pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, and reserves the right to further brief the jurisdictional basis for removal should Plaintiff challenge this Court's subject matter jurisdiction.

Dated: July 31, 2026

SNELL & WILMER L.L.P.

By *_/s/ Lea K. Schneider_*

Lea K. Schneider, WSBA No. 56471
600 University Street, Suite 310
Seattle, Washington 98101
206.741. 1420
lschneider@swlaw.com
*Attorneys for Defendant United Parcel Service, Inc.*

## CERTIFICATE OF SERVICE

I, Kaia Johson, certify that on July 31, 2026, I caused to be served a copy of the foregoing document on the following parties, via the method indicated below:

| | |
|---|---|
| Joanna Ghosh<br>Lawyers for Justice, P.C.<br>701 Pike Street, Suite 1650<br>Seattle, WA 98101<br>Telephone: (425) 521-5121<br>joanna@calljustice.com<br><br>*Attorneys for Plaintiff* | ☐ Via Legal Messenger<br>☒ Via 1st Class US Mail<br>☐ Via Facsimile<br>☐ Via Email<br>☒ Via eService |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 31st day of July, 2026, at Portland, Oregon.

*s/Kaia Johnson*____________________
Kaia Johnson



SNELL & WILMER
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420